Okay, our final case of the day is appeal number 22-2486, Carolyn Bridges v. Blackstone. Good afternoon, your honors. May it please the court, Kyle Schamberg on behalf of the plaintiff's appellants. I'm here asking the court to reverse the district court's dismissal of the plaintiff's amended complaint without prejudice. Plaintiffs here have alleged that the defendant Blackstone violated the Illinois Genetic Information Privacy Act, JIPA, as part of its... Sure, I didn't know if I would go with JIPA or GIPA. The act is fine. That defendant violated the act when it compelled the disclosure of plaintiff's genetic information as part of its acquisition of Ancestry.com in 2020. In the district court, there was a need for a requirement that Blackstone compelled some. Yes, there is. Section 15 of the act also discusses the release of information. And there were some allegations that dealt with the release of information. But the issue here, certainly before the court, is the compel, section 30, and the definition of compel. And what the district court did on that issue and on another issue that I'll get into is it drew reasonable inferences and construed the factual allegations that were made against the plaintiffs. And it did so on two broad points, the first being the definition of the word compel. And the district court set up a definition that I don't think is incorrect, and that the district court noted the parties agreed on. And that was essentially that compel requires more than the passive receipt of information, and it requires more than simply asking for something. But what the district court incorrectly did, I would submit, is find that the And I would suggest that they did at paragraphs 27 and 28 of the amended complaint, which is where I would start. And what's the definition of the appellants to the question regarding compel? It would be to influence or oblige someone to do something in a manner more than simply requesting or asking for that. Be exerting some influence over someone to take an action. Where are you basing that definition or pulling that definition from? The generally understood definition of compel, I know the plaintiffs below the district court had offered a dictionary.com definition. That's the one that we use. And there were a few other ones that are referenced. The definition from dictionary.com, though, is to force or oblige someone to do something. But then it also talks about influencing them, force or oblige. And the second definition under dictionary.com is to have a powerful and irresistible effect, influence, et cetera. And it seems you've pulled from that language a different definition. Well, there's definitions that focus more, I would say, on what is the strongest interpretation of compel, and that is to force through threats or overwhelming pressure. But these definitions also talk about obliging a person to do something, let's say, influencing or obliging. And I would influence or oblige Ancestry to transfer the data. And here's why I would suggest that we've alleged that. In the Bloomberg article from which we pull some of our allegations and which cites the regulatory filings, there were two statements that Blackstone had made publicly 11 days after it completed the acquisition of Ancestry.com. One was that it was preparing to package and sell data from companies that it acquires. The other is that Blackstone already has information sharing and usage agreements in place that permitted to obtain data from portfolio companies owned by its funds. So at the time Blackstone acquired Ancestry, and as we alleged, it was enacting a business plan of acquiring entities in order to gather, obtain, and then monetize their data. And that makes sense here. Ancestry.com is a very profitable business. That's a very proprietary data set of genetic information. It would make sense that Blackstone would want to acquire that as part of this publicly stated business strategy. And so we've alleged that as part of this strategy and as part of the deal that Blackstone made with Ancestry, they required Ancestry.com to transfer that data. Let me ask, what was the form of the acquisition? Was it an asset sale? Was it a stock deal? Was it a merger? It was a merger. It was an acquisition. Does Ancestry.com Inc. still exist? I believe that it does. That would suggest it's a stock purchase. I was just going to say, this is part of the difficulty that we have because this is a private equity transaction. We don't have access at this stage, pre-discovery, to all the terms of the deal and what was required. However, based on the fact that Blackstone was acquiring data from the companies that it purchased, it is reasonable to infer, and I would say it would be unreasonable not to infer, that as part of the deal that was structured between these companies that we don't have access to, Blackstone said one of the terms of the deal is you're going to transfer this data to us. That's not pulled out of nowhere. It's pulled out of what they had said they were going to do publicly. My question, in essence, is whether it's just the change in control that you think is sufficient to show a violation of the statute, section 30? I believe that if Blackstone took control over Ancestry, kept Ancestry.com as a separate, let's say subsidiary, separate entity, but gained access to the information, that information was therefore disclosed to Blackstone regardless of the form. So the change in control is sufficient to violate the statute? Yes. Okay. So what happens, suppose you got information protected by the statute that is in the control and ownership of a human being? Miles, for example. That human being dies and control passes to his estate. Is that a violation of the statute? Now the executor has it. Yes, because the genetic information can only be disclosed to people who are specifically authorized by the person whose information is obtained. By dying, he has violated the statute. You're talking about that human being who died, his own genetic information? No, no, no. He possesses a set of files. Maybe it's a docket. Of others? Of others. Protected by the statute. He dies and the files go in, are an asset of his estate. That's enough? Absent the written authorization of the person whose information was affected, it would not, it would violate JIPA to disclose that information. In your reply brief, you suggested, if I understood you correctly, that Blackstone violated the statute by even making the offer to acquire the history document. Well, there's, that would fall under the concept of, that would be more of a section 15 argument, which we did mention in the reply brief, but for the release of information causing the release. I'm sorry, Judge. So I'll ask you a question before you, I know you want some rebuttal time here on, you don't spill nearly as much ink in your briefing on the argument that your adversary makes about the recipient of information facing liability. What's your best argument on that that the language even fits this circumstance? I think it's similar to the district court's reasoning, Judge Scudder, in that when it says disclose or be compelled to disclose, that I think would. It's a lot different though than saying no person may compel. Right? I mean, I don't, I just, I have a hard time seeing the fit. Yeah, I think it would be protect. I understand your argument about compel itself. I'm just not so sure the recipients covered here. I think it's intended to cover based on the fact that the statute discusses the release of information in section 15. When it talks about 30, it talks about requests for in section five. It's clearly contemplating entities that are looking to obtain this data. And those sections would imply to me that the be compelled is having it apply to the recipients of that data. Otherwise it would be superfluous because it's already prevented the company who owns the data from disclosing it. I think we should take any, any stock at all of the remedy of a preliminary injunction being made expressly available by the Illinois legislature in this statute. The only, the only context in which a preliminary injunction makes any sense to me is that the plaintiff is trying to stop the defendant from doing something that the plaintiff believes is going to lead to some kind of legal harm, right? That way. Yes. So a preliminary injunction only makes sense to me in the context of thinking about not the recipient, but the would be discloser that ancestry.com on this fact pattern. It certainly would apply in that case, but also if the plaintiffs had been informed, and it's one of the suggestions that we made if prior to the culmination of this deal, if ancestry.com, it said, we are going to release this information to an acquiring company. You have 60 to 90 days to determine whether you want us to keep it or delete it. The plaintiffs would have been able to pursue an injunction there to stop it from happening. If they would have said, you know, we're not going to destroy the data. We are going to transfer. It looked like there may be some case that's been brought against ancestry. There is a case. Transaction, it seems that way, right? So ancestry will argue what it argues and plaintiffs will make whatever, but here we don't have, we don't have ancestry. We have the acquiring company. Yes. And I would say that the plaintiffs would have an opportunity to, in that case, to pursue a preliminary injunction against ancestry, but they also, based on the language of the statute, are able to pursue a case against the company that's here from Mr. Roth. We'll give you a minute on rebuttal. Thank you, judge. Good afternoon, your honor, members of the panel. May it please the court, Martin Roth on behalf of Blackstone. The issue on appeal is whether the district court correctly dismissed plaintiff's class action, alleging that Blackstone violated the genetic information privacy act merely by buying ancestry.com in a stock purchase. The answer to that must be yes, for the reasons a lot of your honors questions have already hinted at. It was a stock purchase. It's in the press release that plaintiffs cite and attach to their complaint that talks about a control transaction. So the act here prevents companies that possess genetic information and genetic test results from releasing or disclosing those results to third parties. It does not prevent investment firms like Blackstone from buying companies that lawfully possess genetic information. And in fact, as we've cited in the debate over the act, the Illinois legislature talked about promoting genetic testing for things like law enforcement, disease prevention, et cetera. So clearly they wanted to allow for genetic testing, not hinder it and preventing these sort of basic transactions that cause investment in companies that have genetic information would be against that policy. In addition, as your honors are very familiar, Illinois has another statute called BIPA, the biometric information privacy act, which has spawned tons of litigation. And in that statute, that language expressly prohibits obtaining or acquiring biometric information. So the words of this statute are different. Illinois legislatures understand how to pass laws that prohibit this sort of conduct. And they did so in BIPA, which has been amended during some of the same legislative sessions during which the act here has also been amended. So, Roth, let me ask you about the compel point, okay? Sorry to interrupt your kind of thought there, but the reason that I have difficulty with your compel argument and benefit from hearing you push back on this is that it seems that your client, at least as alleged, may have been under a contractual obligation in the deal. As alleged, I know it may turn out to different factually, you know, to transmit protected information with the obligation being one of contract. And it doesn't seem odd at all to me to think of a party being compelled to do something by contract. Now, to be sure, a contract is not a use of force or anything like that. But one common, you know, you have to pay money damages for each of the contracts, specific performance can be awarded to fulfill contractual obligations. It doesn't seem a stretch at all to me to say that Blackstone was compelled here. So, two responses, Your Honor. Sorry, ancestry. Yeah, two responses. So, the first is a point you were getting at in the questioning of my colleague, which is if statute doesn't say compelled, it says be compelled. And I take that the access... It's a different point, right? Right. We'll get to that. Okay. So, on the compelled point, I think that it would have been very easy for the legislature to write something like contract acquire purchase. They do that in GIPA. They don't do that here. And when you look at the dictionary, a business transaction, which is generally considered a voluntary arm's length transaction, even if it results in a contract, wouldn't be considered compelled under the dictionary definitions that we provide. Suppose the deal... I'm not asking you to disclose anything you shouldn't disclose. Suppose the deal is structured in a way that Blackstone acquires protected information. Okay. The genetic profiling, the results of testing, it links to individuals by name, by date of birth. So, let's just stipulate that it's protected. And after you close the deal, ancestry refused to transfer the files. It would seem to me that your client would be in a pretty good position to say, look, you're contractually compelled to do that. That's a term of the deal here. So, you're going to have to do one of two things. We're going to have to unwind the deal. We either want rescission or we want specific performance. So, first, to be clear, those are not our facts. Those are not the terms of the deal, and that's not pledged. I don't know whether they are or they're not. I'm not... I'm just trying to get a hypothetical to you to try to figure out what's compelled here. I think if Blackstone took the affirmative step of going to court and the court entered an order saying that that was correct, then they would be compelled by force of law. But the existence of a provision in a contract alone is not compelled under the dictionary definitions or the case law we cite. In fact, we cited the Washington v. Meacham case from the Connecticut Supreme Court, which looked at a very similar statute and said that it's only where real physical or moral compulsion from an external source is placed on a person does that satisfy the definition. So, I take your Honor's point. I think, you know, we could theorize a lot of compulsion by force of law, but that's not how courts or the dictionary interpret the term present in the statute here. Now, on the point of to be compelled, we don't have to win that point. Judge Dugan actually rejected it. But I think that the passive voice is important because the legislature certainly could have written a sentence. They could have done it. They could have been more specific. But under your theory, what work does that clause do? So, I think the work it's doing is... goes to Judge Scudder's question, right? So, one of the things you can do under the statute is get an injunction to prevent a party or require a party to disclose genetically protected information. And if you look at the totality of these two sections, section 15, which they've waived any argument about, it's not in their appellate brief, the opening brief or in the district court, and section 30, you see what I'm talking about. So, section 15 talks about the confidentiality of genetic information and has a whole laundry list of definitions as to how it's confidential, how it can be used in law enforcement, health, etc. Section 30, the operative provision at issue here, says no person may disclose or be compelled to disclose the identity of any person upon whom a genetic test is performed or the result of a genetic test in a manner that permits identification of the subject of that test, except for the following persons. And there's a whole list there, things like people designated authorized agents of a health facility, health facilities, etc. And so, I think when you read those sections of the act in connection with each other and with section 40, what the legislature is doing is they are saying, in general, this genetic information is confidential. You can't disclose it, except sometimes you can. And courts, when you're looking at this act, you shouldn't compel people unless they fall into these categories to disclose that information. The Illinois legislature modeled this statute off of the HIV Protection Act, which has a similar clause. So, so far as we can tell from the archaeology of this legislation, Illinois took a statute on the books, basically modified it to apply to genetic information, and is more directing courts, whether they're state courts or federal district courts, to comply with the mandates of that act. Just to address a couple of points, unless your honors have specific questions on that, I think it's clear from the dictionary- Talk about the Privacy Act? What was that, Judge Breyer? Yeah, maybe talk a little bit more about the Privacy Act that was in play at the time this case was taken up. It said it will share this information if it's- The Privacy Statement, yes. So, a couple things on that. That was a Privacy Statement on Blackstone acquisition for 10 years, had a statement on its website saying that it would share information in the event of an acquisition. Number one, that shows ancestry wasn't compelled, right? Because it voluntarily was thinking about doing that long before Blackstone came in the picture. But that statement was subsequently modified to say that it might share the information. And the other document that plaintiffs cite in their complaint- And so did they change that before the acquisition? I think it was changed around the time of the acquisition at the end of 2020. Before the acquisition, it still said it will share, and then it changed subsequently. But the other statement that plaintiffs cite in their complaint is this Bloomberg News article. And when the court looks at that, it becomes very clear why Judge Dugan reached the conclusion he did, because it has nothing to do whatever with ancestry or genetic information. It talks generically about how private equity firms like Blackstone and hedge funds like Point78 might start using data held by their portfolio companies to make investment decisions. And it specifically talks about Point78 using data related to the locations of Topgolf to decide to short the stock of Dave & Busters. That's a totally different issue than what is at issue here. And when Judge Dugan looked at that statement, and he saw that Blackstone actually said this was exploratory, no data had been transferred, and it was thinking about doing it in the future, he found that that also undercut the allegations of the complaint. So to summarize, there are sort of two issues here that I think make clear why this court should affirm. First, they haven't stated a statutory claim under any section. We move to dismiss all of the claims under the statute, whether 15 or 30. Their argument on 15 has been waived. Their argument on 30 was explained by Judge Dugan when he explained the definition of compel wasn't satisfied. But separately, and this is critically important too, this case was dismissed without prejudice. Judge Dugan gave the plaintiffs the opportunity to amend their complaint and to allege more. And rather than do that, they just waited and filed an appeal. Under Iqbal and Twombly, they haven't alleged plausible allegations showing any sort of compulsion or transfer. Despite the opportunity to do that, they had no facts to do so, so they didn't. And for all of those reasons, this court should affirm. Okay, very well. Mr. Schomburg? Give you a minute on rebuttal. Thank you, Judge. Just a few quick points, absent any questions from the panel. Mr. Roth mentioned that JIPA wasn't intended to stop the mere acquisition of one company by another, but that's not what this situation is. This is a situation where Blackstone acquired Ancestry with the stated intent of obtaining and monetizing the data that it had, including genetic information. Those facts were plausibly alleged. It makes it different from just a mere market deal, market transaction otherwise. Mr. Roth also, and the illustration that Judge Scudder brought up about a preliminary injunction and that if Blackstone lost in court and was compelled by law to share the information, that would constitute being compelled. But to the point of statutory economy, this statute doesn't say compelled by law. It easily could have. Compelled shouldn't be construed that narrowly to mean, say, a court order, a law enforcement action, or anything like that. Finally, in the privacy statement in terms of Ancestry saying that it will share the information, I would submit that that goes to, again, show the plausibility of the allegation that the data was transferred. And also, it doesn't mean that even if Ancestry said we will share this, if part of the deal and part of the contractual obligation, as Judge Scudder mentioned, meant that Ancestry did have to follow through on that offer, then that would still be compelling, the disclosure of that information. Ultimately, however, though, we're at the pleading stage. The plaintiffs have plausibly alleged reasonable inferences that can be drawn from these facts, and we should at least have the opportunity to go into discovery, even if your honors aren't sure if they will be proven ultimately or not. Thank you for your time. Okay. Thanks to both parties. The court will take the appeal under advisement. That concludes the day's arguments, and the court, again, renews its thanks to McKinney Law School for hosting us today. It's been a real pleasure to sit. Thank you.